**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PAUL WHEELER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-cv-3861 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| PETER PIAZZA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In his First Amended Complaint, Plaintiff Paul Wheeler ("Plaintiff") brings claims against Defendants Peter Piazza, Sydney Roberts, Donnelle Grygiel, and Elmer Garza ("Defendants") for violation of the First Amendment, violation of Plaintiff's due process rights, and conspiracy pursuant to 42 U.S.C. § 1983, as well as violations of state law. Currently before the Court is Defendants' motion [33] to dismiss Plaintiff's First Amended Complaint for failure to state a claim. For the reasons explained below, Defendants' motion [33] is granted. Counts I through VII are dismissed without prejudice. To the extent that Plaintiff brings claims against Defendants in their official capacities for monetary damages, these claims are dismissed with prejudice. Plaintiff is given until March 13, 2018 to file an amended complaint consistent with this opinion, if Plaintiff believes that he can overcome the deficiencies identified below. This case is set for further status hearing on March 20, 2018 at 9:00 a.m.

## I. Background[1]

Plaintiff is a law enforcement officer for the Illinois Secretary of State Department of Police ("ISOS Police") and has been employed in that capacity since May 2010. [26, ¶ 5.]

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

According to Plaintiff, during all relevant times alleged in the First Amended Complaint, Defendant Sydney Roberts was the Director of the ISOS Police; Defendant Peter Piazza was the Deputy Director of the ISOS Police; Defendant Donnelle Grygiel was a Captain of the ISOS Police; and Defendant Elmer Garza was an Acting Sergeant or Sergeant of the ISOS Police. [*Id.*, ¶¶ 6–9.] All Defendants are named in the First Amended Complaint in both their individual and official capacities. [*Id.*]

Plaintiff alleges that, beginning in October 2013 and continuing through June 2014, Plaintiff met with the Office of the Inspector General ("OIG"), members of the Federal Bureau of Investigation, and an investigator for the DuPage County State's Attorney's Division of Investigation to report alleged misconduct and abuse by ISOS Police personnel. [*Id.*, ¶¶ 11–12.] Plaintiff reported several general allegations of misconduct; Plaintiff also reported several allegations specific to Defendant Piazza (including that Defendant Piazza ordered Plaintiff to violate the due process rights of a criminal defendant and was often absent from duty without explanation), and specific to Defendant Garza (that Defendant Garza threatened Plaintiff when Plaintiff learned of potential perjury by an individual with close ties to an Illinois politician). [*Id.* ¶ 14.] The OIG investigated the alleged misconduct that Plaintiff reported and, at some point during the investigation, Defendants became aware of these reports. [*Id.*, ¶ 15.]

Plaintiff alleges that Defendants met and conspired to retaliate against Plaintiff for reporting this alleged misconduct. Specifically, Defendants agreed to place Plaintiff on administrative leave in order to conduct a sham investigation into a March 20, 2015 traffic stop of a stopped vehicle conducted by Plaintiff (the "traffic stop"). [*Id.*, ¶¶ 19–20.] During the traffic stop, Plaintiff lawfully arrested the stopped vehicle's passenger and charged that passenger with several criminal violations. [*Id.*, ¶ 17.] Plaintiff also advised the vehicle's driver

that he would obtain a warrant for her arrest, but Defendant Piazza later ordered Plaintiff not to do so. [*Id.*, ¶¶ 17–18.]

The ISOS Police subsequently initiated an investigation into Plaintiff's conduct during the traffic stop. On March 30, 2015, Plaintiff was placed on administrative leave pending the outcome of this investigation. [*Id.*, ¶ 21.] When he was placed on leave, Plaintiff was ordered to surrender his law enforcement credentials and state-owned supplies, thus stripping him of his law-enforcement authority, and his access to Secretary of State premises was limited. [*Id.*] Plaintiff was initially informed that he would be on administrative leave for a maximum of 45 days. [*Id.*] However, beginning in May 2015, Defendants sent Plaintiff several letters delaying the expiration of his leave, and Plaintiff did not return to work until November 2, 2015. [*Id.*, ¶¶ 27, 29–31, 36, 39–41.]

Plaintiff alleges that this investigation into the traffic stop was a sham investigation that Defendants agreed to conduct in retaliation for Plaintiff's reports of misconduct: Defendants did not speak to the driver or passenger of the stopped vehicle before placing him on administrative leave, and neither individual made a citizen's complaint against Plaintiff before Plaintiff was placed on leave. [*Id.*, ¶ 22.] Furthermore, Defendant Grygiel ordered another ISOS Police employee to contact the driver and the passenger from the traffic stop to solicit a citizen's complaint after Plaintiff had already been placed on leave, and the passenger signed such a complaint weeks after Plaintiff's leave had started. [*Id.*, ¶¶ 24, 26.] Defendants also directed the Kane County State's Attorney to dismiss the pending charges against the lawfully-arrested passenger on March 26, 2015. [*Id.*, ¶ 25.]

While still on leave, Plaintiff was interrogated by Lt. James Murphy of the ISOS Police as part of the investigation into the traffic stop. [*Id.*, ¶ 28.] This interrogation took place on May

13, 2015, at the direction of Defendants, and it was recorded. [*Id.*] In August 2015, Lt. Murphy informed Plaintiff that he would need to conduct another interrogation of Plaintiff due to issues with the recording and transcript of the first one in May. [*Id.*, ¶ 32.] Another, substantially similar, interrogation of Plaintiff by Lt. Murphy took place in September 2015. [*Id.*, ¶ 38.] Plaintiff requested a transcript of his May 2015 interrogation on multiple occasions. Defendants initially refused to provide Plaintiff with a transcript of whatever portion of this first interrogation was salvageable, but, after Plaintiff filed a grievance related to this issue, Defendant Roberts said that a copy of the transcript would be provided. [*Id.*, ¶¶ 33–34, 37.] Plaintiff alleges that Defendants' conduct in connection with these interrogations violated several provisions of the Illinois Uniform Peace Officer's Disciplinary Act. [*Id.*, ¶¶ 33, 61.]

Plaintiff's leave ended on October 30, 2015, and Plaintiff reported for duty on November 2, 2015. At the time he reported for duty, Plaintiff was informed via letter from Defendant Roberts of the findings from the ISOS Police investigation into the traffic stop. [*Id.*, ¶ 42.] Plaintiff was notified that, based on these findings, he would be suspended for 18 days. [*Id.*] Plaintiff filed a grievance relating to his suspension, which was still pending at the time the First Amended Complaint was filed. [*Id.*, ¶¶ 43–44.] Plaintiff served his suspension between January 4, 2016, and January 28, 2016. [*Id.*, ¶ 45.] When Plaintiff returned to work, he was subject to certain restrictions that similarly situated law enforcement officers were not subject to. Specifically, he was assigned to permanent desk duty and ordered not to take any enforcement actions except in emergencies. [*Id.*]

Plaintiff thereafter filed this action against Defendants in March 2016. [See 1.] Defendants moved to dismiss this initial complaint for failure to state a claim, [see 16], which was stricken without prejudice after Plaintiff filed an amended complaint, [see 26]. In the First

Amended Complaint, Plaintiff brings Section 1983 claims against all Defendants in their individual and official capacities for using a sham investigation to unlawfully retaliate against Plaintiff for engaging in protected speech, in violation of the First Amendment (Count I); for conducting a sham and suspect investigation into the traffic stop, thus denying Plaintiff his right to due process under Illinois law and the Fourteenth Amendment (Count II); and conspiracy to deprive him of his constitutional rights (Count III). Plaintiff also brings claims against all Defendants for violation of the Illinois State Officials and Employees Ethics Act, 5 Ill. Comp. Stat. 430/15-10 (Count IV); for violation of the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/1 *et seq.* (Count V); for state law conspiracy (Count VI); and for indemnification (Count VII). Currently before the Court is Defendants' motion [33] to dismiss all claims in the First Amended Complaint for failure to state a claim.

## II. Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim

under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

## III.    Analysis

Defendants move to dismiss all claims in the First Amended Complaint, arguing that each of Plaintiff's claims fails as a matter of law.

### A.    Federal Claims

#### 1.    Official Capacity Claims (All Counts)

As a threshold matter, the Court will address Plaintiff's Section 1983 claims against Defendants in their official capacities. In the First Amended Complaint, Plaintiff states that he is suing all Defendants in both their individual and official capacities. [26, ¶¶ 6–9.] "Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Although such official capacity actions are permissible under Section 1983 when injunctive relief is requested, the Eleventh Amendment "bars federal courts from ordering the state to disburse funds to a private party for retroactive damages." *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1051 (7th Cir. 2013). Plaintiff seeks only monetary damages and fees, not injunctive relief, from each Defendant. [26, ¶¶ 58, 63, 70, 74, 78, 83.] This relief is unavailable in an official capacity Section 1983 suit. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989). Therefore, Plaintiff's claims against each Defendant in his or her official capacity for monetary damages must be dismissed with prejudice.

See *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (affirming dismissal of claims for monetary damages from defendants acting in their official capacity as barred by the Eleventh Amendment); *Berwick Grain Co., Inc. v. Ill. Dep't of Agriculture*, 116 F.3d 231, 233 n.1 (7th Cir. 1997) (defendants named in their official capacities not subject to suit under Section 1983 insofar as plaintiff requests damages). The Court will consider Plaintiff's claims against each Defendant in his or her individual capacity only.

### 2. Violation of the First Amendment (Count I)

Count I alleges that Defendants violated Plaintiff's First Amendment right to free speech. Specifically, Count I alleges that Defendants placed Plaintiff on administrative leave and subsequently conducted a sham investigation of the traffic stop as a pretext to conceal their own wrongful conduct and to retaliate against Plaintiff for engaging in the protected speech of reporting misconduct to the OIG, the FBI, and the Kane County State's Attorneys Office. [26, ¶¶ 52–58.]

Public employees, such as Plaintiff, have a right in certain circumstances to speak as citizens on matters of public concern. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 703 (7th Cir. 2010) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). The First and Fourteenth Amendment prohibit a state government entity from retaliating against an employee engaged in such protected speech. *Id.* at 703–04. To make out a *prima facie* case for First Amendment retaliation under Section 1983, Plaintiff must demonstrate that (1) his speech was constitutionally protected; (2) he has suffered a deprivation that is likely to deter free speech; and (3) his speech was "at least a motivating factor in the employer's actions." *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)); *Graber v. Clarke*, 763 F.3d 888, 894–95 (7th Cir. 2014). While making a *prima*

*facie* case is an evidentiary requirement, not a pleading standard, "this requirement lends guidance to the Court's determination whether a plaintiff has sufficiently alleged his First Amendment retaliation claim" at the motion to dismiss stage. *Sroga v. Preckwinkle*, 2017 WL 345549, at *3 (N.D. Ill. Jan. 24, 2017) (internal alterations omitted) (quoting *Schmidt v. Vill. of Glenwood*, 2015 WL 3918952, at *3 (N.D. Ill. June 24, 2015)).

Defendants do not challenge Plaintiff's allegations on the first two elements and instead focus on the third; they argue that, even if Plaintiff can meet these first two elements, Plaintiff cannot establish that his protected speech was a motivating factor for the Defendants' investigation into the traffic stop. In order to establish this causal link, Plaintiff can rely on either direct or circumstantial evidence. *Massey*, 457 F.3d at 717; see also *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (discussing similar causation analysis in relation to a Title VII retaliation claim).[2] "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other employees in the protected group." *Kidwell*, 679 F.3d at 966 (quoting *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009)). This circumstantial evidence must show "that the protected activity and the adverse action are not wholly unrelated." *Id.* (citation omitted). Suspicious timing between the protected activity and the adverse action may, on its own, be enough to raise an inference of causation between the protected speech and the alleged retaliation: but, in order to rely only on suspicious timing to raise this inference, a plaintiff must demonstrate that the adverse employment action "follows close on the heels of protected expression" and that the person who imposed the adverse action knew of that protected expression. *Id.* (quoting *Lalvani v. Cook Cty.*, 269 F.3d 785, 790 (7th Cir. 2001)). There is no set time limit for determining what "close on the

---

[2] The *prima facie* case for Title VII retaliation claims is the same as it is for First Amendment retaliation claims. See *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 642 (7th Cir. 2013).

heels" means, but the Seventh Circuit allows "no more than a few days to elapse" between the protected activity and the adverse employment action to raise an inference of causation. *Kidwell*, 679 F.3d at 966–67 (collecting cases and concluding that gaps of five weeks and two months between protected speech and allegedly retaliatory employment actions "militate[d] against allowing an inference of causation based on suspicious timing"); see also *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven-week interval was not sufficient, without more, to demonstrate causation for Title VII retaliation claim); *Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (four-month gap was insufficient to establish retaliation); *Weiler v. Vill. of Oak Lawn*, 2016 WL 397293, at *5 (N.D. Ill. Feb. 2, 2016) (four-month interval "is too long under governing Seventh Circuit authority to support a reasonable inference of causation without other evidence"); *Ghiles v. City of Chi. Heights*, 2016 WL 561897, at *2 (N.D. Ill. Feb. 12, 2016) (at the motion to dismiss stage, a six-month delay was "too remote" to link the protected speech and allegedly retaliatory conduct); *Diadenko v. Folino*, 890 F. Supp. 2d 975, 989–90 (N.D. Ill. 2012) (gap of two months was too speculative to support retaliation). *Cf. Kinney v. Anglin*, 889 F. Supp. 2d 1101, 1118 (C.D. Ill. 2012) (plaintiff alleging that defendants learned of protected speech five days before adverse employment action stated *prima facie* case for First Amendment retaliation).

Plaintiff's First Amendment retaliation claim in Count I must be dismissed because he has failed to plausibly allege that his reporting of alleged misconduct to the OIG and other authorities was at least a motivating factor for Defendants' placing of Plaintiff on administrative leave and their subsequent investigation of the traffic stop. Plaintiff alleges in his First Amended Complaint that he made his reports of alleged misconduct from October 2013 through June 2014, and that Defendants retaliated against him for these reports in March 2015 by placing him on

leave and initiating a sham investigation. [26, ¶¶ 11, 15, 19–20.] The nine-month gap between the speech and the alleged retaliation is too large under Seventh Circuit precedent to sufficiently state, without more, a retaliation claim, even at the motion to dismiss stage. See *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) ("[A] retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible."); see also *Brownlee v. Catholic Charities of the Archdiocese of Chi.*, 2017 WL 770997, at *7 (N.D. Ill. Feb. 28, 2017) (dismissing Title VII retaliation claim because well-pleaded facts did not plausibly give rise to the inference of a causal connection between employee's grievance and the allegedly retaliatory conduct); *Ghiles*, 2016 WL 561897, at *2 (no claim for First Amendment retaliation because time gap, with no other evidence, was too large to plausibly support claim); *Schlessinger v. Chi. Housing Auth.*, 2012 WL 5520848, at *8 (N.D. Ill. Nov. 13, 2012) (dismissing First Amendment retaliation claim because two-year time gap "defeats any inference that Defendants acted in retaliation" for the plaintiff's protected speech).

Plaintiff argues that, at the motion to dismiss stage, he merely needs to "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). And it is true that suspicious timing is not an element that Plaintiff must prove, especially at this stage of the case. See *Carlson*, 758 F.3d at 828–29 (reversing dismissal of Title VII retaliation claim because plaintiff had plausibly alleged an ongoing campaign of retaliation, sufficient to state a claim, despite five-month gap between protected behavior and discharge); see also *McCarragher v. Ditton*, 2017 WL 2180436, at *8 (N.D. Ill. May 18, 2017) (refusing to dismiss First Amendment retaliation claim because "without discovery, it is premature to conclude that the timing of [defendant's] decisions was

definitively benign"); *Gracia v. SigmaTron Int'l, Inc.*, 244 F. Supp. 3d 762, 769 (N.D. Ill. 2017) (denying motion to dismiss Title VII retaliation claim as premature because the timing "support[ed] a plausible inference" of causation at that stage of the case).

But Plaintiff has not presented a story that "holds together" on his retaliation claim. Plaintiff alleges that, at some point during the OIG investigation into his reports of misconduct, Defendants "became aware" of these reports. [26, ¶ 15.] But there is nothing at all in Plaintiff's factual allegations that raises an inference that Defendants became aware of these reports "close on the heels" of the traffic stop. *Kidwell*, 679 F.3d at 966. Plaintiff argues that the exact date on which Defendants did learn of Plaintiff's reporting will be revealed through discovery, and that it is too early to determine the context surrounding Defendants' actions to affirmatively say that they were not suspicious. [37, at 4.] But Plaintiff only speculates as to when Defendants learned of his misconduct reports to the authorities and whether it was close in time to the initiation of the traffic stop investigation. And Plaintiff alleges no facts from which the Court can infer that Defendants only learned of the speech in 2015, or that Defendants engaged in a pattern of retaliation stretching back in time to when Plaintiff initially made these reports—the only sustained pattern of potential retaliation alleged in the First Amended Complaint begins with the sham investigation in March 2015, followed by the delays in the conclusion of that investigation. Without any factual allegations to support this inference of causation, the Court cannot make it.[3] See *Brownlee*, 2017 WL 770997, at *7; *Ghiles*, 2016 WL 561897, at *2 ("The six-month delay is

---

[3] In their reply brief, Defendants make certain references to the timing of the OIG's investigation, and the report of that investigation, which they argue affirmatively demonstrate that Defendants learned of Plaintiff's reports in June 2014 at the latest. [42, at 3 n.2]. However, the report of the investigation is not attached to or referenced in the First Amended Complaint (or to Defendants' briefing). A Rule 12(b)(6) motion must be decided only "based on the complaint, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691, 702 (N.D. Ill. 2016) (internal quotation marks and citation omitted). Because this report is not attached to, or referenced in, the First Amended Complaint, the Court does not rely on Defendants' representations in this opinion.

too remote to link Ghiles's unsuccessful campaign * * * and his alleged suspension[.]"); see also *Garner v. City of Country Club Hills, Ill.*, 2012 WL 3017966, at *2–3 (N.D. Ill. July 23, 2012) (denying motion to dismiss retaliation claim where complaint pled facts beyond suspicious circumstances and timing and, therefore, the "inference that Plaintiff asks the Court to draw is reasonable at the motion to dismiss stage").

Plaintiff also argues that his retaliation allegations are not limited to the suspicious timing of his speech and the traffic stop investigation.  [37, at 4.]  As further support for his First Amendment retaliation claim, Plaintiff points to his allegation that Defendant Garza threatened him when he learned that an offender may have committed perjury.  [26, ¶ 14.]  But this allegation does not support Plaintiff's retaliation claim.  Plaintiff does not allege that Garza made this threat because of, or at all in relation to, Plaintiff's reporting of misconduct; rather, Plaintiff alleges that this threat is one example of the misconduct that Plaintiff was reporting to the OIG in 2013–2014.  [*Id.*]  The Court can discern no further allegations in the First Amended Complaint, beyond the timing of Plaintiff's reporting and the subsequent traffic stop investigation, that plausibly support Plaintiff's claim of retaliation.

Therefore, Count I of the First Amended Complaint is dismissed without prejudice.

### 3.    Violation of Due Process (Count II)

Count II alleges that Defendants violated Plaintiff's right to due process of law.  Plaintiff specifically alleges that Defendants violated his right to due process under Illinois state law and the Fourteenth Amendment by placing him on administrative leave in order to conduct a sham investigation of the traffic stop to cover up their misconduct, and to retaliate against Plaintiff for reporting that misconduct.  [26, ¶¶ 59–63.]

Procedural due process imposes constraints on government actions which deprive an individual of "liberty" or "property" interests within the meaning of the Fourteenth Amendment's Due Process Clause. See *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To state a claim for a violation of procedural due process, Plaintiff must allege (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process. *Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607 (7th Cir. 2014) (quoting *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010)); see also *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008) (plaintiff must allege "a deprivation of a protected interest" and "insufficient procedural protections surrounding the deprivation").

Plaintiff's claim fails at the first step because he has not sufficiently identified a source for the property interest he claims to have. Property interests are not created by the Constitution but are instead derived from independent sources, such as state law. *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 943 (7th Cir. 1996). Plaintiff alleges that he was placed on administrative leave in violation of his due process rights: at the broadest level, then, Plaintiff is claiming to have a protectable property interest in his continued employment with the ISOS Police. Because Plaintiff was employed in Illinois, the Court looks to Illinois law to determine whether he had a protected property interest in his employment. *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). Under Illinois law, a person has a property interest in his job where he has a legitimate expectation of continued employment based on a legitimate claim of entitlement. *Covell v. Menkis*, 595 F.3d 673, 676 (7th Cir. 2010). "To show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him." *Moss*, 473 F.3d at 700 (citation and internal quotation marks omitted).

To support his claim of a property interest in his position as an ISOS Police officer, the only state law on which Plaintiff relies is the Illinois Uniform Peace Officers' Disciplinary Act (IUPODA), 50 Ill. Comp. Stat. 725/1 *et seq.*  [See 26, ¶¶ 61–62.]  The IUPODA lays out procedures to be followed in conducting interrogations of Illinois peace officers.  See 50 Ill. Comp. Stat. 725/3.1–11.  But a procedural statute such as the IUPODA does not establish property interests that are protected under the Fourteenth Amendment's Due Process Clause. *Miyler v. Vill. of E. Galesburg*, 512 F.3d 896, 898 (7th Cir. 2008).  In fact, the Seventh Circuit has specifically held that the IUPODA does *not* create a property interest in continued employment sufficient to invoke the protection of the Due Process Clause.[4]  *Cain v. Larson*, 879 F.2d 1424, 1426–27 (7th Cir. 1989); see also *May v. Vill. of Glendale Heights*, 2005 WL 327060, at *5 (N.D. Ill. Feb. 7, 2005) ("[T]he only applicable [I]UPODA provisions are procedural in nature, which plaintiff cannot rely upon to assert a constitutionally protected property interest."); *Reyes v. Rockford Park Dist.*, 2003 WL 21698437, at *1 (N.D. Ill. July 18, 2003) (due process claim dismissed where plaintiff's only support for a property interest in continued employment as a police officer was the IUPODA); *Beres v. Vill. of Huntley, Ill.*, 1994 WL 97742, at *7 (N.D. Ill. Mar. 25, 1994) ("[P]laintiff cannot rely on procedural guarantees in [the IUPODA] to assert a constitutionally protected property interest.").  While there might be other provisions of Illinois state law on which Plaintiff may rely in order to sufficiently allege a property interest in continued employment, Plaintiff has not identified them.  As such, Plaintiff's due process claim

---

[4] The Seventh Circuit has noted that the IUPODA does contain one substantive provision that would create such a property interest.  See *Cain v. Larson*, 879 F.2d 1424, 1427 (7th Cir. 1989).  This provision provides that "[n]o officer shall be discharged, disciplined, demoted, denied promotion or seniority, transferred, reassigned or otherwise discriminated against in regard to his or her employment * * * by reason of his or her exercise of the rights granted by this Act."  50 Ill. Comp. Stat. 725/7.  Plaintiff has neither cited to this provision nor claimed that he was placed on leave because he exercised his rights under the IUPODA.  Thus, this provision of the IUPODA does not apply to Plaintiff's due process claim in Count II.

must be dismissed on that basis.[5]  See *Bant v. Bd. of Trustees of Univ. of Ill.*, 2006 WL 91327, at *3–4 (C.D. Ill. Jan. 12, 2006); *Reyes*, 2003 WL 21698437, at *1.

Moreover, even if Plaintiff had sufficiently pled a property interest in his continued employment with the ISOS Police, Plaintiff has not sufficiently pled that he was deprived of that interest.  Plaintiff claims that he was placed on administrative leave in violation of his due process rights.  [See 26, ¶¶ 60–62.]  But the only deprivation that he alleges in connection with this administrative leave is the deprivation of his "law enforcement credentials," his state-owned supplies, and his "law enforcement authority."  [*Id.*, ¶¶ 21, 27, 29–31, 36.]  Plaintiff has no property interest in the "purely dignitary or otherwise nonpecuniary dimensions of employment," the deprivation of which does not implicate due process concerns.  *Swick v. City of Chi.*, 11 F.3d 85, 87 (7th Cir. 1993) (no deprivation of a property interest where plaintiff police officer placed on involuntary sick leave was required to turn in his badge and gun, and was forbidden from exercising the powers of a police officer, but had alleged no loss of pecuniary benefits).  Plaintiff does not allege that he suffered any pecuniary losses during his administrative leave.  Therefore, Plaintiff's allegations regarding his administrative leave do not implicate due process concerns.[6]

---

[5] Plaintiff cites *Velazquez v. Office of the Ill. Sec'y of State*, 2011 WL 6257298, at *5 (N.D. Ill. Dec. 14, 2011), to support his claimed property interest in his position as an ISOS Police officer.  [37, at 5.]  But *Velazquez* does not rely on or cite to the IUPODA as the basis for this property right, and instead references a different statute.  *Velazquez*, 2011 WL 6257298, at *5 (citing provision of the Secretary of State Merit Employment Code).  Plaintiff has not mentioned that statute, or any other statute besides the IUPODA, in either his First Amended Complaint or in his briefing.  Even if the Court were inclined to simply rely on the same statute in *Velazquez* and assume that Plaintiff has a property interest in his position based on it, it is ultimately irrelevant to the disposition of this motion.  As further discussed, Plaintiff has not alleged that he has been deprived of his position, even assuming he has a protected property interest in it.

[6] Although the First Amended Complaint does not address whether Plaintiff's leave was paid or unpaid, Defendants assert in their briefs that Plaintiff was paid throughout his administrative leave.  [34, at 5 n.3.]  Plaintiff does not dispute this in his opposition.  The Court need not consider this assertion though because, as discussed above, Plaintiff's First Amended Complaint does not allege that he suffered any pecuniary losses from his administrative leave that would implicate the Due Process Clause.  See *Palka v.*

Plaintiff's First Amended Complaint also alleges that, once he returned to duty and served his 18-day suspension, he was assigned to permanent desk duty and ordered not to take any law enforcement actions except in emergencies. [26, ¶¶ 45–46.] These reductions in his duties do not appear to be part of Plaintiff's due process claim. [*Id.*, ¶¶ 59–63.] To the extent that Plaintiff is attempting to rely on these allegations in Count II, they only refer to the "nonpecuniary" dimensions of his employment as an ISOS police officer and do not state a claim for violation of due process. *Swick*, 11 F.3d at 87; see also *Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005) (citations omitted) ("[A] job action that causes no pecuniary loss whatsoever does not implicate the Constitution.").

The First Amended Complaint further references Plaintiff's 18-day suspension from the ISOS Police, and that a grievance regarding this suspension is pending. [26, ¶ 44.] Count II does not allege that Plaintiff's suspension is a basis for Plaintiff's due process claim, [see *id.*, ¶¶ 59–63], and therefore his allegations regarding this suspension also do not warrant a different result on his due process claim. To the extent that Plaintiff alleges that his 18-day suspension also violated his right to due process, this claim appears to be premature because the First Amended Complaint states that a grievance is pending relating to this suspension. There are no allegations regarding the procedures for this grievance that would form a basis for a due process claim at this juncture. See *Cushing v. City of Chi.*, 3 F.3d 1156, 1164 (7th Cir. 1993) ("[T]he existence of a state remedy can play a role in determining whether an individual has stated a claim for a deprivation of due process."). If Plaintiff believes he has a basis to challenge his

---

*Shelton*, 623 F.3d 447, 452–53 (7th Cir. 2010) (due process claim dismissed where plaintiff had not alleged any direct or indirect economic consequences of his suspension).

suspension and/or the procedure to adjudicate his grievance, he may do so in an amended complaint.[7]

Therefore, because Plaintiff has failed to state a claim for violation of due process, Count II must be dismissed. This dismissal is without prejudice.

### 4.    Section 1983 Conspiracy (Count III)

In Count III, Plaintiff alleges that Defendants conspired to deprive him of his constitutional rights by agreeing amongst themselves to develop a pretextual reason for placing Plaintiff on administrative leave. [26, ¶¶ 64–70.] Conspiracy is not itself an independent basis of liability under Section 1983. See *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); see also *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982) ("Section 1983 does not * * * punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises."). In order to state a claim for conspiracy under Section 1983, Plaintiff must show that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Wilson v. Baptiste*, 2016 WL 521000, at *9 (N.D. Ill. Feb. 10, 2016) (citing *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015)). Where there is no underlying constitutional deprivation, there is no Section 1983 conspiracy claim. *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000); see also *Ellis v. City of Chi.*, 2016 WL 212489, at *10 (N.D. Ill. Jan. 19, 2016) (dismissing Section 1983 conspiracy claim where plaintiff had not sufficiently alleged any underlying constitutional violations); *Hill v. City of Chi.*, 2009 WL 174994, at *9 (N.D. Ill. Jan. 26, 2009) ("[I]f a plaintiff fails to prove an underlying constitutional injury, any attendant conspiracy claim necessarily fails."). Because

---

[7] Defendants indicate in their reply brief that an arbitration regarding Plaintiff's grievance has occurred and argue that Plaintiff will not be able to amend his complaint to include allegations regarding this procedure. [See 42, at 7–8.] As with Defendants' other representations regarding the details of Plaintiff's leave, this arbitration is not referenced in the First Amended Complaint, and the Court therefore will not address Defendants' arguments on this issue.

Plaintiff has not stated a claim for an underlying constitutional violation in Counts I or II, his Section 1983 conspiracy claim must also be dismissed.[8] This dismissal is without prejudice.

### B. State Law Claims

With the granting of Defendants' motion to dismiss the three federal claims over which it has original jurisdiction, the Court addresses whether to retain jurisdiction over the remaining state law claims, Counts IV–VII. See 28 U.S.C. § 1367(c)(3). The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no justification for departing from that "usual practice"[9] in this case, Plaintiff's state law claims are dismissed without prejudice. See *In re Repository Techs., Inc.*, 601 F.3d 710, 724–25 (7th Cir. 2010); *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) ("When the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts.").

---

[8] Even if Plaintiff had sufficiently pled an underlying constitutional violation, all Defendants are public employees amenable to suit under Section 1983 directly, "which means that a conspiracy claim has no role to play." *Scott v. City of Chi.*, 619 F. App'x 548, 548 (7th Cir. 2015) (citing *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)).

[9] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251–53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. 735 Ill. Comp. Stat. 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice also is appropriate here because substantial judicial resources have not been committed to the state law counts of Plaintiff's complaint. *Wright*, 29 F.3d at 1251.

## IV.     Conclusion

For the reasons explained above, Defendants' motion [33] is granted.  Counts I through VII are dismissed without prejudice.  To the extent that Plaintiff brings claims against Defendants in their official capacities for monetary damages, these claims are dismissed with prejudice.  Plaintiff is given until March 13, 2018 to file an amended complaint consistent with this opinion, if Plaintiff believes that he can overcome the deficiencies identified below.  This case is set for further status hearing on March 20, 2018 at 9:00 a.m.

Date: February 13, 2018

Robert M. Dow, Jr.
United States District Judge