# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| PAUL WHEELER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-cv-3861 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| PETER PIAZZA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In his Second Amended Complaint, Plaintiff Paul Wheeler renews his claims against Defendants Peter Piazza, Sydney Roberts, Donnelle Grygiel, and Elmer Garza (collectively "Defendants") for conspiring to and then violating his First Amendment rights under 42 U.S.C. § 1983 as well as Illinois state law. Currently before the Court is Defendant's motion to dismiss [54] Plaintiff's second amended complaint for failure to state a claim. For the reasons explained below, Defendants motion [54] is denied in part and granted in part. Count VI is dismissed for failure to state claim, while Plaintiff may proceed with the remaining counts. Additionally, the Court strikes Exhibits A & B [55-1; 55-2] attached to Defendants' motion and did not consider them in the resolution of this motion. The case is set for further status on March 20, 2019 at 9:00 a.m.

## I.    Background[1]

The full background of this case is set forth in the Court's previous opinion, knowledge of which is assumed here.  See [46 (*Wheeler v. Piazza*, 2018 WL 835353 (N.D. Ill. Feb. 13, 2018))]. In brief, Plaintiff, an officer with the Illinois Secretary of State Department of Police ("ISOS Police"), alleges that from October 2013 to June 2014 he met with various state and federal investigators multiple times to report alleged misconduct and abuse by ISOS Police personnel, including at least two of the defendants.  [52, ¶¶ 5, 11–15.]  Plaintiff alleges that at some point before June 2014, Defendants became aware of the allegations and the investigations.  [*Id.* ¶ 16.]

Upon learning of these discussions, Defendants allegedly conspired to retaliate against Plaintiff.  [*Id.* ¶¶ 28.]  In addition to the allegedly sham investigation that led to the imposition of a punitive leave and a reduction of his responsibilities, [*id.* ¶¶ 25–59; see also 2018 WL 835353, at *2], Plaintiff now alleges several other instances of retaliatory conduct between his protected speech in 2013 and 2014 and March 2015 when Defendants placed him on leave and initiated a sham investigation.  Specifically, Plaintiff alleges that Defendants:

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Platinum's well-pleaded factual allegations and draws all reasonable inferences in Platinum's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).  The Parties dispute whether the Court may take judicial notice of Exhibits A & B attached to the Defendants' motion.  "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).  Defendants assert that the Court may take judicial notice of the two exhibits because the existence of each is referenced in the complaint. [60, at 2.]  However, the exception to which Defendants refer—"documents * * * [that] are referred to in the plaintiff's complaint and are central to his claim"—is "aimed at cases interpreting, for example, a contract." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (citations and quotation marks omitted).  That is not the case here. Here, the documents at issue are not contracts or other documents requiring the Court's interpretation that are critical to Plaintiff's claims.  Rather, it appears that Defendants are attempting to refute the assertions in Plaintiff's complaint by introducing evidence showing Plaintiff's own allegedly unconstitutional behavior to demonstrate Plaintiff's allegations are not credible.  But questions of credibility belong to the ultimate trier of fact and should not be resolved on a motion to dismiss.  Consequently, the Court concludes that it cannot consider those documents without converting the instant motion to a motion for summary judgment, which it declines to do. *Geinosky*, 675 F.3d at 745 n.1.  The Court will therefore strike Exhibits A & B to Defendants' motion—though without prejudice to submitting them again with any motions for summary judgment—and did not consider them in the resolution of the instant motion.

(1) purposely delayed his order of specialty body armor (necessitated by his use of an insulin pump) for almost 5 months—from April 3 to August 29, 2014—when such orders typically take 2–3 weeks, [52, ¶¶ 17–18];

(2) denied two separate requests from Plaintiff in October 2014 to move his residence to Kane and DeKalb counties, respectively, [*id.* ¶ 22];[2] and

(3) denied Plaintiff's request in January 2015 to have a "moving radar" installed in his vehicle despite the availability of funds and the fact that Plaintiff "conducted a majority of investigations in District 1 relating to 'driving under the influence of alcohol' [ ] and 'speeding' offenses while providing that equipment to less qualified and more junior individuals, [*id.* ¶ 23].[3]

Additionally, Plaintiff alleges that in August 2014, a co-worker informed him that "he needed to 'stay under the radar' because the Defendants were watching him." [*Id.* ¶ 21.] The co-worker also informed him that Defendants had been sending emails to each other about him for several months. [*Id.*] The alleged conspiracy and pattern of retaliation culminated in what Plaintiff asserts was a sham investigation into a traffic stop that Defendants used as an excuse to punish him for his discussions with investigators. [*Id.* ¶¶ 25–57.]

In light of Defendants' purported actions, Plaintiff filed this action in March 2016. [1.] Defendants then moved to dismiss the initial complaint, see [16], which the Court struck without prejudice after Plaintiff filed his first amended complaint, see [26]. That complaint asserted claims under § 1983 for violation of Plaintiff's First Amendment and due process rights, conspiracy to deprive him of those rights, and a host of state law claims. See generally [26.] Defendants subsequently filed a motion to dismiss, [33], which this Court granted on February 13, 2018, [46].

---

[2] In their memorandum in support of the instant motion [55], Defendants assert that his third request was granted, but do not provide judicially noticeable support for that statement. Consequently, the Court must disregard it.

[3] Plaintiff also alleges that Defendants prohibited him from conducting investigations related to individuals applying for Temporary Visitor Driver's Licenses—an Illinois driver's license available to undocumented or non-visa status individuals, see 625 ILCS 5/6105.1(a–5)—and ordered that Plaintiff no longer be assigned to these matters in June 2014. [52, ¶ 19.] However, in the same paragraph of the complaint he states that they did so because he was following a departmental policy that they did not agree with. [*Id.*] The Court cannot infer that this decision was motivated by retaliatory intent, when Plaintiff himself has provided a reason for why Defendants prevented him from conducting these investigations. The purported fact that Defendant was the only officer who was allegedly removed from these kind of cases [*id.* at ¶ 20], does not change the court's conclusion.

The Court's memorandum opinion and order also granted Plaintiff leave to file an amended complaint by March 13, 2018, [46], which Plaintiff did, see [52]. Defendants have again moved to dismiss the entire complaint [54], and the Court now resolves that motion.

## II. Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

## III.    Analysis

Defendants have moved to dismiss all claims in the Second Amended Complaint, arguing that each of Plaintiff's claims fail as a matter of law.

### A.    Federal Claims

#### 1.    Violation of the First Amendment (Count I)

The Court previously dismissed Plaintiff's First Amendment retaliation claim because it concluded that it could not plausibly infer that his speech was a motivating factor for the Defendants' allegedly retaliatory actions. Specifically, the fact that approximately nine months passed between his protected speech and when Defendants allegedly instituted a sham investigation against him was too great a gap for the Court to plausibly infer causation between the protected speech and Defendant's acts. See [46, at 7–12.] Consequently, the Court dismissed the claim with leave to file an amended complaint consistent with that ruling.

Plaintiff now alleges several other instances of retaliatory conduct between his protected speech during period from October 2013 to June 2014 and March 2015 when Defendants placed him on leave and initiated a sham investigation. As noted above, Plaintiff alleges that Defendants: (1) purposely delayed his order of specialty body armor, (2) denied two separate requests to move his residence, and (3) denied Plaintiff's request in January 2015 to have a "moving radar" installed in his vehicle. [52, ¶¶ 17–18, 22, 23.] Additionally, Plaintiff further alleges that in August 2014, a co-worker informed him that "he needed to 'stay under the radar' because the Defendants were watching him." [*Id.* ¶ 21.] The co-worker also informed him that Defendants had been sending emails to each other about him for several months. [*Id.*]

As the Court previously explained, a *prima facie* case of First Amendment retaliation under § 1983 requires a plaintiff to show (1) that his speech was constitutionally protected; (2) that he

has suffered a deprivation that is likely to deter free speech; and (3) his speech was "at least a motivating factor in the employer's actions." *Wheeler*, 2018 WL 835353, at *3. While conceding the first element, Defendants maintain that these new allegations of retaliatory conduct do not constitute a deprivation likely to deter free speech and that even with these new allegations, the Court may not infer that Plaintiff's protected conduct led to the alleged retaliation. The Court address each contention in turn.

### a. Adverse Action

"Retaliation need not be monstrous to be actionable under the First Amendment; it need merely create the potential for chilling employee speech on matters of public concern." *DeGuiseppe v. Vill. of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995).[4] In fact, the Seventh Circuit has expressly rejected the notion that plaintiffs alleging retaliation for constitutionally protected speech under § 1983 must allege the same kind of "adverse employment action" as required to state a claim under Title VII or other federal antidiscrimination suits. *Power v. Summers*, 226 F.3d 815, 821 (7th Cir. 2000). As the court explained in *Smith v. Fruin*, "even minor forms of retaliation can support a First Amendment claim, for they have may have just as much of a chilling effect on speech as more drastic measures." 28 F.3d 646, 649 n.3 (7th Cir. 1994). "'[A] campaign of petty harassment' and 'even minor forms of relation,' 'diminished responsibility, or false accusations'" can be actionable under the First Amendment." *Power*, 226 F.3d at 821 (citing *DeGuiseppe*, 226 F.3d at 192); but see *Pieczynksi v. Duffy,* 875 F.2d 1331, 1333 (7th Cir. 1989) (noting harassment does not violate the First Amendment if it is "so trivial that person of ordinary firmness would not be deterred from holding or expressing those beliefs"). The question is simply whether the

---

[4] The excerpt that Defendants cite from *DeGuiseppe* regarding "materially adverse" changes, [55, at 6], was expressly limited by the Seventh Circuit in *Power v. Summers*. See 226 F.3d 815, 820–21 (7th Cir. 2000) ("All we meant was that the action of which the employee is complaining must be sufficiently 'adverse' to deter the exercise of those rights.").

allegedly retaliatory action, or pattern of actions, would "'be sufficient to deter an ordinary person from engaging in [the] First Amendment activity in the future.'" *Casimir v. City of Chicago*, 2018 WL 1695362, at *7 (N.D. Ill. Apr. 6, 2018) (quoting *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012)).

In *Power*, for example, the Seventh Circuit explained that it could not say that denying the plaintiff a several-hundred-dollar raise in retaliation for speaking out was unlikely to deter the exercise of free speech as a matter of law, even if the raise was discretionary. 226 F.3d at 821. Similarly, in *Bart v. Telford*, the court of appeals concluded that a "campaign of petty harassments" that included reprimands and ridicule—including ridicule for bringing a birthday cake—could be enough to deter the exercise of free speech. 677 F.2d 622, 625 (7th Cir. 1982).

Defendants argue that even taken as a whole, the conduct that Plaintiff complains of does not amount to a campaign of petty harassments that would discourage a person of ordinary firmness from speaking. For example, Defendants point out that none of the actions left Plaintiff worse off, but merely maintained the status quo. But it is easy to see why being forced to wear an uncomfortable vest for several extra months without explanation, being unable to move to the area of one's choice, and being denied the proper equipment to conduct the majority of one's work would negatively affect an individual.[5] Moreover, Plaintiff has alleged more than just these few, albeit petty actions, Plaintiff has alleged a series of slights that culminated in an sham investigation, a lengthy suspension, and the subsequent reduction of his duties. The more difficult question, and the one to which the Court now turns, is whether Plaintiff's new allegations allow the Court to

---

[5] Defendants citation to *Croft v. Moore*, 638 F.Supp.2d 1024 (W.D. Wis. 2009), is unpersuasive. First, *Croft* addressed a motion for summary judgment, and while the court was extremely skeptical that a plaintiff could convince a jury based on the three deprivations he allegedly suffered—being reassigned to school liaison duties and a day-shift schedule with no weekend work, and driving a squad car without radar—it resolved the retaliation claim on qualified immunity and not the alleged constitutional deprivation itself. *Id.* at 1031–32. Here, as explained above, Plaintiff has alleged more than just these three incidents, and a jury might agree that the totality of his allegations would dissuade the person of ordinary firmness from speaking out.

infer that the entire string of allegedly retaliatory actions, and especially the allegedly sham investigation and what followed, were at least partially motivated by Plaintiff's protected speech.

### b. Causality

As the Court explained previously, to establish causality, a Plaintiff may rely on either direct or circumstantial evidence. *Massey v. Johnson,* 457 F.3d 711, 717 (7th Cir. 2006). Specifically, a court may infer causality from the suspicious timing of allegedly retaliatory actions. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). However, for the court to draw such an inference, a plaintiff must demonstrate that the retaliatory action came "close on the heels of the protected expression" and that the person who imposed the adverse action knew of that protected expression. *Id.* (quoting *Lalvani v. Cook Cty.*, 269 F.3d 785, 790 (7th Cir. 2001)).

While Plaintiff clearly need not put forward evidence that supports his claim at the motion to dismiss stage, *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014), he must allege some facts from which the Court may infer that the protected speech and retaliatory actions were connected, see *Wheeler*, 2018 WL 835353, at *4 (collecting cases). Plaintiff's previous complaint failed to state a claim because he alleged a nearly nine-month gap between the protected speech and the "sham investigation" he asserted that Defendants had conducted against him and there was nothing "in Plaintiff's factual allegations that raise[d] an inference that Defendants became aware of these reports "close on the heels" of the traffic stop." See *id*. at *4–5 (citation omitted). As previously explained, Plaintiff has since added three additional retaliatory actions to his complaint and one additional conversation that he asserts pushes his complaint into plausibility

Defendants disagree, alleging that at least two of the events—the denials of Plaintiff's two requests to relocate (October 2014) and the denial of Plaintiff's moving radar request (January 2014)—took place too far after Plaintiff's protected speech for the Court to infer causation.

Furthermore, Defendants argue that the new allegations are too sporadic and minor to "constitute a 'sustained pattern' of retaliation 'stretching back in time when Plaintiff initially made these reports.'" [55, at 10 (citing [46], at 11).] Finally, Defendants contend that the fact that almost six months passed between the co-worker's comment to Plaintiff and the final instance of retaliation makes it too implausible for the comment to support Plaintiff's theory that Defendants were planning to relate against him. In support of that argument, however, Defendants cite only cases that were decided on summary judgment. [See *id.* at 10–11 (collecting cases).] None of Defendants' cases address whether such a comment, combined with an alleged pattern of abuse, is enough to survive a motion to dismiss.

The Court concludes that the new allegations of retaliatory acts, combined with the new allegation regarding a purported vendetta against Plaintiff, raise Plaintiff's allegations of retaliation above a "speculative level." *Concentra Health Servs., Inc.,* 496 F.3d at 776. Unlike in the First Amended Complaint, Plaintiff has now alleged specific facts from which the Court may infer that Defendants engaged in a pattern of retaliation stretching back in time to when Plaintiff initially made his reports. [46, at 18.] The fact that approximately two months passed between each instance of conduct—August to October to January to March—does not defeat Plaintiff's claim as a matter of law. Likewise, while the fact that six months past between the warning from Plaintiff's coworker and the "sham investigation" gives the Court pause, that allegation combined with the other allegations plead facts beyond suspicious circumstances and timing that allow this Court to draw a reasonable inference at this stage. See *Garner v. City of Country Club Hills, Ill.,* 2012 WL 3017966, at *3 (N.D. Ill. July 23, 2012) ("Plaintiff is not required to plead specific evidence of intent at this stage; she is only required to plead facts that if true raise the possibility of relief above a "speculative level."). Although the Court is skeptical that Plaintiff will be able

to survive summary judgment without the discovery of additional evidence, it cannot conclude that Plaintiff's allegations do not state a plausible claim as a matter of law. Consequently, the Court denies Defendant's motion as to Count I.

### 2. Conspiracy (Count II)

While the Court expressed doubts about the viability of a conspiracy claim in its previous opinion, *Wheeler*, 2018 WL 835353, at *8 n.8, Plaintiff has nonetheless reasserted his § 1983 conspiracy claim in his second amended complaint. Defendants move to dismiss the claim on three separate grounds: (1) failure to adequately plead conspiracy, (2) superfluousness, and (3) the intercorporate conspiracy doctrine.

To state claim under § 1983 for civil conspiracy, a plaintiff must allege facts from which the Court may reasonably infer there was "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988). While Defendants assert that Plaintiff must plead conspiracy with "specificity," [55, at 15], the Seventh Circuit has held that "[u]nder *Twombly*, all [a] plaintiff need[s] to allege [is] a plausible account of conspiracy." *Geinosky*, 675 F.3d at 749. As the court in *Geinsoky* explained, even though a plaintiff may plead "rather conclusory direct allegations of conspiracy," where there is a pattern of harassment over an extended period it is a "challenge to imagine a scenario in which that harassment would not have been the product of a conspiracy." *Id.*

Here, Plaintiff has alleged a series of retaliatory acts and a conversation in which a co-worker warned him that the Defendants were monitoring him and exchanging emails regarding him. [52, ¶¶ 17–24.] The alleged conspiracy, according to Plaintiff, culminated in a sham investigation and punishment related to it. [*Id.* ¶¶ 28–59.] Although the allegations directly

addressing the conspiracy are somewhat conclusory, see [*id.* ¶¶ 28–29], based on Plaintiff's allegations of a series of retaliatory acts, the Court cannot conclude that Plaintiff has not made out a claim of conspiracy as a matter of law at this stage of the case given the Seventh Circuit's ruling in *Geinosky*.

Similarly, although the Seventh Circuit and courts in this district have repeatedly held that conspiracy claims for the violation of constitutional rights are superfluous when all the actors involved are state employees, each of those cases appear to have involved claims or analysis under 42 U.S.C. § 1985.[6] See, e.g., *Scott v. City of Chicago*, 619 F. App'x 548, 548 (7th Cir. 1999) ("All of the defendants in this suit, however, are public employees (plus their employer), which means that a conspiracy claim has no role to play.");[7] *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("Turley's conspiracy claim [under 42 U.S.C. § 1985] is superfluous in light of the fact that all named defendants are state actors.").[8] Defendants' citation of that authority is therefore inapposite.

In fact, recent decisions from the Seventh Circuit and this district suggest that a plaintiff may simultaneously pursue substantive and conspiracy claims under § 1983. See, e.g., *Daugherty*

---

[6] Subsection 3 of 42 U.S.C. § 1985 provides a right of action against private citizens who conspire with public officials to deprive individuals of their constitutional rights who would otherwise be immune to suit under 42 U.S.C. § 1983. 42 U.S.C. § 1985(3).

[7] Nothing in the briefing submitted to the Seventh Circuit suggested that that Plaintiff was seeking to state a conspiracy claim under § 1985 rather than § 1983. See, e.g., *Scott v. City of Chicago, et al.*, No. 15-1281, ECF No. 13, at 6 (7th Cir. Aug. 18, 2015) ("The district court correctly ruled that Scott failed to state a claim for conspiracy under section 1983."). Nonetheless, the discussion in the Seventh Circuit's order prior to its pronouncement regarding conspiracy claims against public employees alone, seems to suggest that the court of appeals assumed that Plaintiff was seeking to state a conspiracy claim under § 1985. See *Scott*, 619 F. App'x at *548 ("A conspiracy between private parties and state actors authorizes suit against the private parties in federal court.").

[8] While the *Turley* court noted that, "Turley's conspiracy claim is superfluous in light of the fact that all named defendants are state actors," it explicitly noted that that conclusion was in the context of § 1985 claim. 729 F.3d at 649, 649 n.2 ("As we noted in *Fairley v. Andrews,* 578 F.3d 518, 526 (7th Cir.2009), the function of a conspiracy claim under 42 U.S.C. § 1985(3) is to 'permit recovery from a private actor who has conspired with state actors.' * * * When, as here, the defendants are all state actors, 'a § 1985(3) claim does not add anything except needless complexity.' [ ]") (citation omitted).

*v. Page*, 906 F.3d 606 (7th Cir. 2018) (concluding plaintiff had produced inadequate evidence to defeat summary judgment on his § 1983 conspiracy claim against state officials, but noting that the district court had erred in granting summary judgment against him on his First Amendment retaliation claim); *Serrano v. Guevara*, 315 F. Supp. 3d 1026, 1039 n.12 (N.D. Ill. 2018) (declining to dismiss conspiracy claims where they were based on surviving substantive claims). Consequently, the Court declines to find Plaintiff's conspiracy claim superfluous at this time.

The Court turns next to the intercorporate conspiracy doctrine (the "ICD"), under which employees of a corporation who jointly pursue its lawful business do not become "conspirators" when acts within the scope of their employment are said to be discriminatory or retaliatory. *Tabor v. City of Chicago*, 10 F. Supp. 2d 988, 994 (N.D. Ill. 1998) (citing *Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 110 (7th Cir. 1990). The goal of the doctrine is to "preserve independent decision-making by [ ] entities and their agents free of the pressure that can be generated by allegations of conspiracy." *Id.* While the Seventh Circuit has explicitly held that the doctrine applies to governmental entities in claims under 42 U.S.C. § 1985, see *Wright v. Illinois Dept. of Children & Family Services*, 40 F.3d 1492, 1507–08 (7th Cir. 1994), it has suggested that the doctrine also applies to § 1983 claims and nearly every court in this district has applied it to such cases. See *Scott*, 619 F. App'x at 548; see also *Strauss v. City of Chicago*, 2018 WL 4679585, at *12 (N.D. Ill. Sept. 28, 2018) (collecting cases and noting "[m]ost courts in this district have found that the intra-corporate conspiracy doctrine does apply to such § 1983 claims").

Application of the ICD does not depend on whether the conspirators' actions were wrongful, but whether the wrongful conduct was performed with the scope of the conspirators' official duties. *Tabor*, 10 F. Supp. 2d at 994 (citation omitted). The question is whether the defendants' ability to injure a plaintiff derives solely from their positions within the entity for

which they work, and the influence they consequently wield.  If the answer is yes, then the doctrine

applies.  *Id.*

For example, in *Tabor*, the district court concluded that the intercorporate doctrine applied

to a suit against the City of Chicago and city employees in their individual and official capacities.

10 F. Supp. 2d at 989, 994.  The court grounded that conclusion on two key facts: (1) plaintiff did

not allege that any person outside the employment of the city had conspired to deprive him of his

constitutional rights and (2) the defendants' ability to injure the plaintiff was derived solely from

their official positions, *i.e.*, "if the individual defendants had not been employed by the City, they

would not have been in a position * * * to retaliate against [the plaintiff]."  *Id.* at 994.  Here, the

facts are nearly identical:  Defendants are all members of the ISOS Police and they would not have

been able to harm Plaintiff but for their positions within the ISOS Police.

However, the Seventh Circuit has noted two exceptions to the ICD: (1) "where corporate

employees are shown to have been motivated solely by personal bias"; and (2) where "the

conspiracy was part of some broader discriminatory pattern * * *, or * * * permeated the ranks of

the organization's employees."  *Hartman v. Board of Trustees of Community College Dist. 508,* 4

F.3d 465, 470–71 (7th Cir. 1993).  In *Hartman*, the court of appeals explained that in cases "where

corporate employees are shown to have been motivated solely by personal bias * * * the interests

of the corporation would have played no part in the employees' collective action, so the action

could not have been taken within the scope of employment."  4 F.3d at 470.  Subsequent decisions

have characterized this exception as the "egregious circumstances" exception.  *Payton v. Rush-

Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 633 (7th Cir. 1999) (upholding denial of

plaintiff's claim under the incorporate conspiracy doctrine where plaintiff failed to respond to the

argument, or even point to a putatively "egregious circumstance"). Plaintiff argues that Defendants' alleged actions fall into the first category.

Defendants respond that the cases Plaintiff cites involved gross police misconduct against civilians, rather than against fellow officers. [60, at 7 (citing *Cannon v. Burge*, 2006 WL 273544 (N.D. Ill. Feb. 2, 2006), aff'd, 752 F.3d 1079 (7th Cir. 2014); *Salto v. Mercado*, 1997 WL 222874 (N.D. Ill. Apr. 24, 1997)).] Defendants also invoke *Tabor* and *Ghiles v. City of Chicago Heights* to argue that this suit is nothing more than a run-of-the-mill employment case and that the ICD therefore applies. [*Id.* (citing 10 F.Supp.2d. at 994; 2016 WL 561897 (N.D. Ill. Feb. 12, 2016)).] However, the court in *Tabor* explicitly noted that plaintiff had not alleged that the Defendants were "motivated solely by personal bias," but rather that he was the victim of "systemic and institutional discrimination." 10 F.Supp.2d at 994. Similarly, in *Ghiles* the plaintiff asserted that an unknown group of individuals had conspired to falsely arrest and maliciously prosecute him in retaliation for his candidacy under the auspices of a disfavored party. 2016 WL 561897, at *1. The allegations were so vague, however, that the *Ghiles* court concluded that the plaintiff had not adequately pled a conspiracy claim and added in dicta that he had not identified any relevant exceptions to the intercorporate conspiracy doctrine. *Id.* at *3. Additionally, at least one other district court has held that a campaign of retaliation against an officer by his fellow officers after reporting their wrongdoing may meet the second *Harman* exception. See *Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 779 (N.D. Ill. 2014) ("The second exception applies here, at least on the pleadings, as the amended complaint alleges a widespread pattern of retaliation by multiple defendants throughout CPD's ranks."); see also *Volk v. Coler*, 845 F.2d 1422, 1435 (7th Cir. 1988) (holding that the ICD did not bar a conspiracy claim where the plaintiff "alleged numerous acts undertaken by several defendants").

Moreover, absent either of the exceptions, multiple courts in this district have held that where the alleged conspiracy involves retaliation against another individual within the same organization, the ICD should not apply. See, e.g., *McDonough v. City of Chicago, Dep't of Water Mgmt.*, 2008 WL 2309709, at *4 (N.D. Ill. June 2, 2008) ("For conspiracies such as the one alleged here, involving a classic charge of retaliation, the underpinnings of the intra-corporate conspiracy doctrine do not apply."); *Gross v. Town of Cicero*, 2006 WL 288262, at *12 (N.D. Ill. Feb. 1, 2006), aff'd in part, rev'd in part sub nom. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697 (7th Cir. 2010) ("Agreeing to harass and/or retaliate against an employee is not within the scope of Defendants' authority"); *Fairley v. Andrews*, 300 F. Supp. 2d 660, 669 (N.D. Ill. 2004) ("We fail to comprehend how agreeing to harass and retaliate against employees is within the scope of Defendants' employment.").

*Fairley*, for example, resolved an almost identical question in case involving an alleged conspiracy by fellow officers and supervisors to retaliate against fellow county jail corrections officers for speaking out against the excessive use of force by their fellow correctional officers. 300 F.Supp.2d at 662. The *Fairley* defendants asserted that the conspiracy claim was barred by the ICD because "the acts underlying count two were within the scope of their employment." *Id.* at 668–69. However, the court explained that "while some of the allegedly retaliatory conduct— assigning double-duty shifts, denying paternity leave, investigations of misconduct—were routine, everyday decisions, the alleged agreement to harass and retaliate against Plaintiffs cannot be similarly described." *Id.* at 669. "Plaintiffs did not allege a conspiracy to assign double-shifts, but a conspiracy to deprive them of their First Amendment rights." *Id.* Consequently, the plaintiff's conspiracy claim was not barred by the ICD. *Id.*

Here, the allegations largely mirror those in *Fairley*: Plaintiff reported wrongful actions by at least two of the defendants and then all the defendants allegedly conspired to retaliate against him with a campaign of small inconveniences that culminated in a sham investigation, all of which could fairly be described as routine decisions. However, as in *Fairley*, the decision to retaliate against a fellow officer and collaborate with other officers cannot be described as such. Moreover, unlike in *Tabor* where the plaintiff had alleged he was the victim of "systemic and institutional discrimination," 10 F.Supp.2d at 994, here plaintiff has alleged that he was targeted specifically because of his disclosures regarding the Defendants. While perhaps not as egregious as a group incorporating for the sole purpose of escaping conspiracy charges, see *Travis*, 921 F.2d at 110, retaliating against a fellow officer for reporting allegedly criminal conduct by several senior members of a police force—in violation of the First Amendment—cannot be said to be in the lawful interest of that police force. See *Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 821 (N.D. Ill. 2006) ("The deprivation of civil rights is unlawful and the intra-corporate doctrine only applies when members of a corporation are jointly pursuing the corporation's 'lawful business.'") (citation omitted).

The Court is skeptical that the ICD applies at all in this case. But if it does, the first or second exception likely applies, given that conspiring with a group of fellow officers to retaliate against another officer in violation of the First Amendment cannot be fairly described as within the lawful interests of the ISOS Police. Consequently, the Court concludes that Plaintiff's claim is not barred by the intercorporate conspiracy doctrine and Defendants' motion to dismiss Count II is denied.

### B.    State Law Claims

### 1.    Ethics Act (Count III)[9]

Defendants assert that Plaintiff's claim in Count III under the Illinois State Officials and Employees Ethics Act ("the Ethics Act"), 5 ILCS 430/15/5 *et seq.*, fails for the same reasons as Count I.  However, because the Court concludes Plaintiff has now stated a claim under Count I, it denies Defendants' motion as to Count III.

### 2.    Illinois Whistleblower Act (Count IV)

Defendants also maintain that Plaintiff's claim in Count IV under the Illinois Whistleblower Act, 740 ILCS 174 *et seq.* ("the IWA"), must be dismissed because individual employees cannot be held liable under the IWA, and that even if they could, Illinois's sovereign immunity—as codified in the Illinois State Lawsuit Immunity Act, 745 ILCS 5/1 ("the Immunity Act")—applies and should block the claim.  The IWA prohibits an employer from retaliating against an employee who discloses "information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 Ill. Comp. Stat. 174/15(b).  As amended in 2008, the IWA defines "employer" to include "any person acting within the scope of his or her authority express or implied on behalf of [previously described] entities in dealing with its employees." 740 Ill. Comp. Stat. 174/5.

There is a split among courts within this district regarding whether a plaintiff may state a claim against individuals.  Compare *Hernandez v. Sheriff of Cook Cnty.*, 2014 WL 1339686, *3 (N.D. Ill. Apr. 3, 2014) (explaining that the IWA does not permit a claim against individuals), and *Parker v. Ill. Human Rights Comm'n*, 2013 WL 5799125, *9–10 (N.D. Ill. Oct. 25, 2013) (same),

---

[9]  As explained in Section III(B)(2) the Court concludes that sovereign immunity does not apply on the facts alleged.

with *Mack v. City of Chicago*, 2017 WL 951369, at *6 (N.D. Ill. Mar. 10, 2017) (allowing an IWA claim against individuals), and *Hower v. Cook Cnty. Sheriff's Office*, 2016 WL 612862, *3 (N.D. Ill. Feb. 16, 2016) (same), and *Bello v. Vill. of Skokie*, 2014 WL 4344391, *9 (N.D. Ill. Sep. 2, 2014) (same).

After reviewing the cases, the Court agrees with the reasoning of *Mack*, *Hower,* and *Bello*. The text of the statute makes clear that "when an individual interacts with an employee on behalf of the employer—and * * * [supervisors] surely meet this requirement * * *—that person may himself be considered an employer within the meaning of the statute." *Mack*, 2017 WL 951369, at *6. Consequently, Plaintiff may state a claim under the IWA against Defendants given each of them had some form of supervisory role over Plaintiff with a level of final decision-making authority. [52, ¶¶ 6–9.] While Defendants do not otherwise challenge the sufficiency of plaintiff's claim, they assert that sovereign immunity bars Plaintiff's state law claims.

Defendants argue that Plaintiff may not proceed with his IWA claim because such claims are barred by sovereign immunity that prohibits suits against the State.[10] While acknowledging that claims against officials in their personal capacity are generally not barred by sovereign immunity, Defendants nonetheless assert that this Court should conclude that the actual defendant in the IWA claim is the State of Illinois, and therefore bar the recovery of any money damages.

The Immunity Act provides that the State of Illinois is immune from suit in any court except the Illinois Court of Claims. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). That rule applies to state law claims in federal court. *Id.* Under Illinois law, a court must construe a suit against an individual defendant as one against the state for the purposes of sovereign immunity if:

---

[10] Although Defendants have not stated as such, the Court presumes that all the state law claims would be barred by sovereign immunity if the Court concluded sovereign immunity barred the IWA claim given all the claims are based on the same conduct.

> (1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) * * * the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*Richman*, 270 F.3d at 441.

However, sovereign immunity "affords no protection * * * when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority.'" *Richman*, 270 F.3d at 441 (quoting *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990)). *Richman* interpreted the rule narrowly, holding that that unless state-law claims are dependent on the alleged constitutional violation—*i.e.*, a jury could not return opposing verdicts on the state-law and constitutional claims—they are barred by sovereign immunity. *Id.* at 441–42. Although not cited in the parties' briefing, the Seventh Circuit recently reviewed its decision in *Richman* following the Illinois Supreme Court's decision in *Leetaru v. Board of Trustees of University of Illinois*, 32 N.E.3d 583 (Ill. 2015). *Murphy v. Smith*, 844 F.3d 653, 659 (7th Cir. 2016), aff'd, 138 S. Ct. 784 (2018).

In *Leetaru*, the Illinois Supreme Court reversed the dismissal of a suit against the Board of Trustees of the University of Illinois and an associate vice chancellor on the basis that the State of Illinois was the proper party and that the suit was therefore in the wrong venue. 32 N.E.3d at 585, 597–98. The court grounded its decision, in part, on its previous holding in *Healy* that the "doctrine of sovereign immunity 'affords no protection * * * when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority * * *.'" *Id.* at 595 (quoting *Healy,* 549 N.E.2d at 1247). Because Leetaru had adequately alleged that the defendants had violated his constitutional due process rights, the Court concluded that sovereign immunity

did not apply. *Id.* at 597.[11] Taking the *Leetaru* majority "at it its word," the Seventh Circuit in *Murphy* concluded that the "exception" discussed in *Leetaru* applies broadly to all cases in which state defendants allegedly violate statutory or constitutional law. 844 F.3d at 659. Because Murphy had alleged and then proven that the defendants had violated his constitutional rights— the factual proof of which also satisfied a criminal offense—sovereign immunity did not bar his state-law claims. 844 F.3d at 660.

Courts in this district have repeatedly declined to find that suits against individual state employees are actually against the State of Illinois and apply sovereign immunity where plaintiffs allege that individual defendants violated their constitutional rights. See, e.g., *Eldridge v. Challenging Law Enf't Official*, 2018 WL 1561729, at *3 (N.D. Ill. Mar. 30, 2018); *Taylor v. Wexford Health Sources, Inc.*, 2016 WL 3227310, at *6 (N.D. Ill. June 13, 2016); *Johnson v. Collins*, 2003 WL 21038626, at *8 (N.D. Ill. May 7, 2003) ("A finding that the defendants retaliated against Johnson for constitutionally protected speech would undermine the defense of sovereign immunity, and thus we cannot say at this stage of the litigation that the defendants are protected by this privilege."); *cf. Young v. Rogers*, 2008 WL 5235366, at *5 (N.D. Ill. Dec. 15, 2008) (concluding that because plaintiff had not adduced sufficient evidence to show that the individual defendant had violated her constitutional rights or exceed his authority as a prosecutor, sovereign immunity applied).

Here, Plaintiff has adequately alleged that Defendants conspired to, and then violated his constitutional rights. Those same actions also violated the IWA. Plaintiff has therefore alleged

---

[11] However, the *Leetaru* court further noted that because the particular motion by which the defendants challenged the complaint admitted the factual sufficiency of the complaint against them, "[w]hether defendants' conduct is, in fact, actionable on the grounds that it was unauthorized, illegal and in violation of Leetaru's rights is a question that defendants may pursue further following remand." *Leetaru*, 32 N.E.3d at 597.

that Defendants acted outside their official authority and thus sovereign immunity cannot not apply.

The Court is not persuaded by Defendants reliance on *Cole v. Bd. of Trustees of N. Illinois Univ.*, 38 F. Supp. 3d 925, 934 (N.D. Ill. 2014). In *Cole*, the plaintiff brought claims under 42 U.S.C. §§ 1981 and 1983 alleging that he had been demoted and suspended because of his race in violation of the Equal Protection Clause. 38 F. Supp. 3d at 929–30. After finding that plaintiff had in fact sufficiently pled claims under Sections 1981 and 1983, the court turned to whether the state law claims were barred by sovereign immunity. *Id.* at 932–34. The court then analyzed whether the specific actions at issue—demotion and suspension decisions—were within the scope of their employment. *Id.* at 934. Because these specific actions were clearly within the scope of their employment, sovereign immunity applied. *Id.* However, the court did not consider whether the fact that these actions were undertaken in violation of constitutional law. Given that omission, the Court is not persuaded by *Cole*.

Finally, notwithstanding the inapplicability of sovereign immunity, Plaintiff may not recover punitive damages because the IWA does not provide for such damages. *Averett v. Chicago Patrolmen's Fed. Credit Union*, 2007 WL 952034, at *3–4 (N.D. Ill. 2007) (concluding the IWA does not provide for punitive damages after evaluating the statute's language and applying rules of Illinois statutory interpretation). Plaintiff has not provided any precedent supporting a conclusion to the contrary.

Thus, for the reasons just explained, the Court the denies Defendants' motion to dismiss Count IV, but strikes Plaintiff's request for punitive damages in Count IV.

### 3. State-Law Conspiracy (Count V)

Defendants reiterate their previous objections to other counts and assert that Count V must be dismissed on sovereign immunity grounds, for failing to state a claim, as superfluous, and under the intercorporate conspiracy doctrine.

First, the Court has already concluded that neither sovereign immunity, nor the intercorporate conspiracy doctrine, applies in this case for the reasons explained above. Similarly, although the elements of conspiracy under Illinois law are slightly different than those for conspiracy under § 1983, compare *Reuter v. MasterCard Int'l, Inc.*, 921 N.E.2d 1205, 1216 (Ill. App. Ct. 2010), with *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988), they are similar enough that the Court concludes that Plaintiff has alleged sufficiently to state a claim under Illinois conspiracy as well for the reasons explained in Section III(A)(2).

However, while a plaintiff may recover damages for a civil conspiracy under federal law, *Scherer*, 840 F.2d at 442, Illinois civil conspiracy law simply "extend[s] liability for a tortious act beyond the active tortfeasor to individuals who have not acted but have only planned, assisted, or encouraged the act. *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999). While Plaintiff's arguments are largely inapposite to the arguments in Defendants' motion, given that the Court has allowed the underlying claim to proceed, the Court declines to dismiss Count V at this time. Should all the defendants be shown to have been directly involved in wrongdoing, however, they may renew this argument in a motion for summary judgment.

### 4. Indemnification (Count VI)

Finally, Defendants' seek the dismissal of Plaintiff's indemnification claim, arguing that the Eleventh Amendment forbids such a claim. "[T]he Eleventh Amendment forbids a federal court from ordering state officials to conform their conduct to state law." *Benning v. Bd. of Regents*

*of Regency Univs.*, 928 F.2d 775, 779 (7th Cir. 1991).  However, a "state's decision to indemnify its employees does not transform a suit against individual defendants into a suit against the sovereign."  *Id.*  Moreover, Count VI does not seek the entry of an order against the state, but merely states that the State is statutorily obligated to indemnify its employees, that all the defendants are state employees and committed the wrongful acts within the scope of their employment, and then requests an order against each of the defendants.  [52, at 2.]

Some courts faced with a similar "count" have declined to dismiss it.  See, e.g., *Watson v. Kink*, 2018 WL 3014830, at *6 (S.D. Ill. June 15, 2018); *Taylor v. Wexford Health Sources, Inc.*, 2016 WL 3227310, at *7 (N.D. Ill. June 13, 2016) *Wright v. Carter*, 2015 WL 4978688, at *6–7 (N.D. Ill. Aug. 20, 2015).  Nonetheless, because (1) Count VI is a "mere legal conclusion" that "does not * * * purport to make a substantive claim," *Wright*, 2015 WL 497688, at *6, and (2) this Court cannot enter a monetary judgment that requires the State of Illinois to indemnify its employees, Defendants' motion is granted as to Count VI.  See *Ollison v. Wexford Health Sources, Inc.*, 2016 WL 6962841, at *9 (N.D. Ill. Nov. 29, 2016) (dismissing a similar count).

## IV.    Conclusion

For the reasons explained above, the Court grants Defendant's motion in part and denies it in part.  Count VI is dismissed, while Plaintiff may proceed on the remaining counts.  The case is set for further status on March 20, 2019 at 9:00 a.m.

Dated: March 5, 2019

_____
Robert M. Dow, Jr.
United States District Judge